UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARIA GOMEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 3:18-CV-00348 |
| | § | |
| STEPHEN MASSEY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Stephen Massey's Motion to Dismiss. Dkt. 20. After reviewing the motion, the response, and the applicable law, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### Factual Background and Proceedings

The League City Police Department hired and commissioned Stephen Massey ("Massey") as a licensed peace officer. Dkt. 15 at 3. On January 23, 2018, Massey responded to an assault call. *Id*. At 5. During his investigation of the call, Massey initiated contact with Alvaro Herrera ("Herrera"), an 18-year-old high school student that allegedly matched the description of the person reported to have committed the assault. *Id*. at 3-5. Massey attempted to handcuff Herrera and the two became entangled in some type of physical altercation. *Id*. at 3-7. While the parties vigorously dispute what happened next, both agree that it resulted in Massey shooting and stabbing Herrera. *Id*. Herrera died from his wounds. Dkt. 1-1.

Now, Herrera's parents, Maria Gomez and Jose Herrera (collectively, the "Parents"), are suing Massey in his individual capacity for wrongful death and violation of 42 U.S.C. § 1983.[1] Massey has moved to dismiss these claims because he believes they fail to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). For the following reasons, the Court grants the motion in part and denies it in part.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The Court's task in this inquiry is to determine whether "the plaintiff has stated a legally cognizable claim that is plausible" on its face and that gives the defendant fair notice of the claims alleged. *See Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010). A plaintiff satisfies both of these obligations by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable" for a justiciable cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that "a complaint may proceed even if recovery is very remote and unlikely, so long as the alleged facts raise a right to relief above the speculative level." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018). Ultimately, a court will not dismiss a claim under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999).

---

[1] In their response to Massey's motion to dismiss, the Plaintiffs state that they have "abandoned the claims enumerated under U.S.C § 1985 and 1986." Dkt. 23 at 9. Therefore, these claims will not be discussed even though they are mentioned in the motion to dismiss.

## Analysis

a. **Violation of 42 U.S.C. § 1983**

The Parents allege that Massey violated § 1983 when he used "excessive force" to deprive Herrera of his "Fourteenth and Fourth Amendment right by and through taking his life and liberty without due process of law." Dkt. 15 at 6-8. Massey moves to dismiss the Fourteenth Amendment version of the Parents' § 1983 claim, because he believes that excessive force complaints must be brought under the Fourth Amendment, rather than the Fourteenth.[2] Dkt. 20 at 6. The Court agrees.

In the landmark case *Graham v. Connor*, the Supreme Court held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under [the Fourteenth Amendment]." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). This is because "[w]here, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons…against unreasonable…seizures' of the person." *Id*. at 394.

Accordingly, the Parents are required to pursue their § 1983 claim against Massey under a Fourth Amendment theory, rather than a Fourteenth Amendment theory. *Mouille v. Live Oak*, 977 F.2d 924, 927 (5th Cir. 1992) ("[A]llegations of excessive use of force implicate the fourth amendment's guarantee of freedom from unreasonable 'seizures'" not

---

[2] Massey never moved to dismiss the Plaintiffs' § 1983 claim under the Fourth Amendment. *See* Dkt. 20.

the Fourteenth Amendment.). The Court therefore dismisses the Parents' Fourteenth Amendment version of their § 1983 claim, but allows their Fourth Amendment § 1983 claim to remain in this case.

b. **Wrongful Death**

The Parents also allege a wrongful death claim against Massey under Texas state law. Massey has moved to dismiss this claim because he believes that he is entitled to statutory immunity under § 101.106(f) of the Texas Civil Practice and Remedies Code. Dkt. 20 at 7. The Court agrees.

Historically, "public employees (like agents generally) have always been individually liable for their own torts, even when committed in the course of employment." *Franka v. Velasquez*, 332 S.W.3d 367, 383 (Tex. 2011). This meant that they, like anybody else, could be sued in their "individual capacit[y]" for their tortious acts at work. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.7 (Tex. 2009). In 2003, however, the Texas legislature altered this common-law scheme when it amended the Texas Tort Claims Act (the "Act") to add § 101.106(f) of the Texas Civil Practice and Remedies Code. *See Garza v. Harrison*, 574 S.W.3d 389, 399 (Tex. 2019). The amendment limited an injured party's right to sue a governmental employee in their individual capacity for a tortious act:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing

> the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code § 101.106(f).

Not to be confused with "official immunity, which is an affirmative defense," § 101.106(f) provides a governmental employee with statutory immunity from suit when he or she is sued for a tort that "(1) is based on conduct within the general scope of the employee's employment and (2) could have been brought under the Act against the governmental unit." *Garza*, 574 S.W.3d at 399-400. If these two prongs are met, "section 101.106(f) compels an election that makes suit against the governmental employer the exclusive remedy for a public employee's conduct within the scope of employment." *Id.* at 399. Any remaining tort claims against the employee in his or her individual capacity must be dismissed. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008). Section 101.106(f) reflects the Texas Legislature's "intention 'to discourage [and] prevent recovery against a [governmental] employee'" in their individual capacity for work related conduct. *See Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 752 (S.D. Tex. 2016) (*citing Franka*, 332 S.W.3d at 375-378); *see also Garza*, 574 S.W.3d at 393-94 ("By adopting section 101.106(f), the Legislature has effectively mandated that only a governmental unit can be sued for a governmental employee's work-related tortious conduct.")

Here, since both elements of the test for § 101.106(f)'s applicability are met, statutory immunity applies, and the Court must dismiss the Parents' state law claim for wrongful death against Massey in his individual capacity.

First, the Court finds that the Parents' wrongful death claim against Massey is based on conduct that was within the general scope of his employment as a licensed peace officer. As the Texas Supreme Court recently explained in *Garza*, whether conduct is within the general scope of an officer's employment is a "narrow and objective inquiry" that turns on a simple question: "was [he or she] doing the job of a peace officer to stop crime when" the alleged act occurred. *Garza*, 574 S.W.3d at 404-406. Purposefully "broad[]," this test is satisfied where, "viewed objectively, 'a connection [exists] between the employee's job duties and the alleged tortious conduct.'" *Id*. at 400-401 (*citing Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017)). Importantly, "the [officer's] state of mind, motives, and competency are irrelevant" when determining if this test is met. *Id*. at 401. So too are questions regarding whether the officer "properly identified himself," "had reasonable suspicion that a crime was occurring," "or placed himself in danger by the manner he chose to effect the arrest." *Id*. at 404. If an officer "was acting under a valid grant of authority conferred by virtue of his status as a peace officer and activated by [one of his job responsibilities]," he will be deemed to have been acting within the general scope of his employment. *Id*. at 406.

Accepting the facts in the Parents' amended complaint and response "as true, and viewing them in the light most favorable to the Plaintiff[s]," the Court finds that the Parents' wrongful death claim is based on conduct within the general scope of Massey's employment. *See In re Katrina Canal Breeches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Massey initiated contact with Herrera pursuant to his investigation of an assault call within his primary law enforcement jurisdiction. Dkt. 15 at 3-7. And as a licensed peace

First, the Court finds that the Parents' wrongful death claim against Massey is based on conduct that was within the general scope of his employment as a licensed peace officer. As the Texas Supreme Court recently explained in *Garza*, whether conduct is within the general scope of an officer's employment is a "narrow and objective inquiry" that turns on a simple question: "was [he or she] doing the job of a peace officer to stop crime when" the alleged act occurred. *Garza*, 574 S.W.3d at 404-406. Purposefully "broad[]," this test is satisfied where, "viewed objectively, 'a connection [exists] between the employee's job duties and the alleged tortious conduct.'" *Id*. at 400-401 (*citing Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017)). Importantly, "the [officer's] state of mind, motives, and competency are irrelevant" when determining if this test is met. *Id*. at 401. So too are questions regarding whether the officer "properly identified himself," "had reasonable suspicion that a crime was occurring," "or placed himself in danger by the manner he chose to effect the arrest." *Id*. at 404. If an officer "was acting under a valid grant of authority conferred by virtue of his status as a peace officer and activated by [one of his job responsibilities]," he will be deemed to have been acting within the general scope of his employment. *Id*. at 406.

Accepting the facts in the Parents' amended complaint and response "as true, and viewing them in the light most favorable to the Plaintiff[s]," the Court finds that the Parents' wrongful death claim is based on conduct within the general scope of Massey's employment. *See In re Katrina Canal Breeches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Massey initiated contact with Herrera pursuant to his investigation of an assault call within his primary law enforcement jurisdiction. Dkt. 15 at 3-7. And as a licensed peace

officer, Massey had an affirmative duty to carry out this investigation. *See* Tex. Code Crim. Proc. Art. 2.13(a)-(b) ("It is the duty of every peace officer to preserve the peace within the officer's jurisdiction. To effect this purpose, the officer shall use all lawful means. The officer shall…interfere without warrant to prevent or suppress crime."). However heart-wrenching the consequences of Massey's work that day were, Massey was "doing the job of a peace officer to stop crime when" the alleged tortious act occurred. *See Garza*, 574 S.W.3d at 406. Although legitimate questions of fact exist as to whether Massey "had reasonable suspicion" to initiate his investigation, or whether Massey "placed himself in danger by the manner he chose to effect [Herrera's] arrest," by law, the Court cannot take these issues in to account when determining § 101.106(f)'s applicability. *Garza*, 574 S.W.3d at 404. Accordingly, the Court finds that this element of the test for § 101.106(f)'s applicability is met.

The second condition that Massey must establish in order to avail himself of § 101.106(f)'s protection is that the alleged tort "could have been brought under the Act against the governmental unit"—in this case the League City Police Department. *See id.* at 399-400. The Court finds that the Parents' wrongful death claim could have been 'brought under the Act' against the League City Police Department.

As discussed at length in *Franka*, "[b]ecause the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, *all tort theories alleged against a governmental unit [or one of its employees]*, whether [they are] sued alone or together with [their] employees, *are assumed to be* 'under [the Act]' for purposes of section 101.106." *Franka*, 332 S.W.3d at 378-379 (emphasis added).

Therefore, according to Texas Supreme Court guidance, this condition for § 101.106(f)'s applicability is virtually always satisfied. *Id.* at 381 ("Properly construed," the 'under the Act' test is "met in almost every [] suit against a government employee…."). The only exception to this general result being when a suit is brought against a governmental employee pursuant to a statute that independently waives immunity, instead of a tort. *See Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 659 ("Claims against [a governmental employee] brought pursuant to waivers of sovereign immunity that exist apart from the Tort Claims Act are not brought 'under [the Tort Claims Act].'"). Otherwise, a tort suit is considered to have satisfied the "brought under the Act" test on the date that "it is filed." *See Franka*, 332 S.W.3d at 380; *see also Wilkerson v. Univ. of N. Tex.*, 878 F.3d 147, 161 (5th Cir. 2017) ("All common-law tort theories alleged against a governmental unit [or employee] are assumed to be 'under the Tort Claims Act' for purposes of section 101.106."). Regardless of whether a governmental entity has waived immunity for that particular cause of action. *See Franka*, 332 S.W.3d at 379 ("The rule [is] that a tort suit against the government, as distinct from a statutory claim, is brought 'under' the Act for purposes of section 101.106, even though the Act does not waive immunity.").

Since the Parents' wrongful death claim arises in tort, the Court finds that the Parents' wrongful death claim could have been 'brought under the Act' against the League City Police Department for purposes of § 101.106(f)'s applicability. Having now found that both elements of § 101.106(f) are met, the Court dismisses the Parents' state law claim for wrongful death against Massey in his individual capacity since he is statutorily immune.

## Conclusion

For the foregoing reasons, Stephen Massey's Motion to Dismiss (Dkt. 20) is **GRANTED IN PART** and **DENIED IN PART**. The Court **DISMISSES** the Parents' Fourteenth Amendment version of their § 1983 claim and the Parents' wrongful death claim. The Parents' Fourth Amendment § 1983 claim will remain in this case.

SIGNED at Galveston, Texas, this 27th day of August, 2019.

_George C. Hanks Jr._
George C. Hanks Jr.
United States District Judge